FILED
2011 Jun-22  PM 03:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| MARIO MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:10-cv-00187-JEO |
| | ) | |
| CENTRAL ALABAMA LIGHTING | ) | |
| SERVICES, INC., | ) | |
| and WILLIAM M. SWEATMAN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter is before the court following a non-jury trial concerning the plaintiff's claims. Premised on the evidence, the undersigned finds in favor of the plaintiff on a part of his claims.

## PROCEDURAL HISTORY

The plaintiff, Mario Moore ("the plaintiff or "Moore") filed his initial complaint alleging that the defendant, Central Alabama Lighting Services, Inc. ("CALS") and its owner, William M. Sweatman ("Sweatman"), required him to work through lunch without compensation and further failed to pay him for drive time at an appropriate rate when he worked over 40 hours during the week. (Doc. 1 (Count I (Fair Labor Standards Act ("FLSA"))).[1]  He also alleged therein that the defendants did not pay him for lunch time during the weeks that he did not work over forty hours. (*Id*. at ¶ 28 (Count II)).  The plaintiff filed an amended complaint alleging the same claims with minor substantive changes. (Doc. 10).  The court has authority over of the matters pursuant to federal question and pendent jurisdiction. *See* 28 U.S.C. §§ 1331, 1367; 29 U.S.C. §§ 216(b) & 217.  Additionally, the parties have consented to the jurisdiction of the undersigned

---

[1] References herein are to the document numbers assigned to the pleadings by the Clerk of the Court.

pursuant to 28 U.S.C. § 636(c).

Following the trial, the parties submitted briefs with proposed findings of fact and conclusions of law for the court's consideration.  Accordingly, the case is appropriate for disposition.

## FACTS

### Background Information

CALS is a Birmingham corporation that was at all material times required to comply with the minimum wage and overtime provisions of the FLSA.  (Doc. 22 (Pretrial Order) at ¶ 5(b)(1)). Sweatman was and is the owner and president of CALS.  (*Id*. at ¶ 5(b)(2)).  He has owned the business since its inception and he runs its daily operations.  (Tr. at 70-71).  For instance, he testified that he is the overall supervisor of operations and that he decides who gets paid what. (*Id*.)

Moore began working for CALS as an independent contractor in December 2006 or January 2007.  (Tr. 9-10, 36, 100).  At some point in January 2007, Moore filled out an application for employment and was hired as an employee by CALS on February 16, 2007. (Tr. 10, 32-34).[2]  The defendants classified Moore as a non-exempt employee under the FLSA and paid him on an hourly basis.  (Pretrial Order at ¶ 5(b)(4)).  Accordingly, CALS was required by the FLSA to pay Moore time and one-half for all hours worked over forty in a week. (*Id*. at ¶ 5(b)(6)).

Moore was an electrician tech.  He worked out of a service truck, installing and maintaining light fixtures and sign pole lights for banks, restaurants and grocery stores.  (Tr. at

---

[2]References herein in to "Tr. ___" are to the trial transcript, located in the record at document 31.

10; Pre-trial Order at 5(b)(3)).  He was required to clock in at a central location at 7:00 a.m. every

work day.  (Tr. at 13 & 75; Pre-trial Order at ¶ 5(b)(7)).  After he signed in, he typically cleaned

and loaded his truck for the day's work.  (Tr. at 12).  He then was required to attended a meeting

where safety issues were discussed and the daily work orders were assigned.  (Tr. at 12, 75-76;

Pretrial Order at ¶ 5(b)(8)).

      After leaving the central site, he would drive from job to job doing the assigned work for

the day, usually Monday through Friday.  (Tr. at 12-13).  He worked with a partner.  (*Id*. at 12).

They were generally assigned an average of fifteen to seventeen work orders per day.  (*Id*. at 14).

At the direction of Sweatman, it was understood that the work tickets were to be completed

during each day.  (*Id*. at 14).  At the end of the day, the plaintiff returned the truck to the shop.

(Pretrial Order at ¶ 5(b)(9)).  Occasionally, Moore finished work at 4:00 p.m., but most days he

worked until 5:00 or 6:00 p.m.  Some days, he worked  until 8:00 or 9:00 p.m.  (Tr. at 12-13).

He worked an average of forty to fifty hours a week.[3]  (Tr. at 15).

      Moore was initially paid $13.00 per hour.  (Pretrial Order at ¶ 5(b)(10)).  His pay was

raised on May 9, 2007, to $14.00 per hour.  (*Id*. at ¶ 5(b)(11)).  It was again raised on September

12, 2007, to $15.00 per hour.  (*Id*. at ¶ 5(b)(12)).  Finally, it was raised on November 11, 2007, to

$16.00 per hour.  (*Id*. at ¶ 5(b)(13)).  He resigned from CALS on January 23, 2008, to take

another job.  (Tr. at 60).

### Unpaid Lunches

      CALS initially did not have a written policy for employee lunch break times.  (Tr. at 81-

82).  Typically, one hour was deducted each day from an employee's hours worked for a lunch

---

[3]Sweatman does not contest Moore's contention that he regularly worked more than 40 hours per week.  (Tr. at 75).

3

period.  (*Id*. at 16, 36-37 & 79).  If the plaintiff worked through lunch, his supervisor required him to write on his time card "no lunch."  (*Id*. at 15-16).  The supervisor would sign off on the time card and pass it on to Sweatman at the end of the pay period.  (*Id*.)  When Moore started working at the business, Sweatman told him that they were going to deduct the hour from his pay each day for lunch.  (*Id*. at 16).

When Moore began working through lunch, he wrote it on his time card.  (*Id*. at 16).  This occurred approximately three times, until Sweatman told Moore to stop writing "no lunch" on his time card around the end of March 2008.  (*Id*. at 17 & 38-39).  He further told Moore that when he and his partner drove from job to job, one should drive and the other should eat.  After the next job, let the other person eat.  (*Id*. at 17-18).  Accordingly, the plaintiff stopped writing "no lunch" on his time cards even though he continued working through lunch.  (*Id*. at 19).  Typically, he would eat his lunch while driving from job to job about four times a week.  (*Id*. at 18).  More specifically, he testified that he had a full hour for lunch with no duties to attend to on Fridays "probably twice out of the month."  (*Id*.)  In a meeting of all employees, Sweatman also told the employees to stop writing "no lunch" on time cards and to take their lunch in their trucks "from job to job." (*Id*. at 50-51).  Moore testified that he went to Sweatman "numerous times" with his check and told him that he (Moore) was owed hours for working through lunch. (*Id*. 16-17).  Nothing changed, however.

Moore's supervisor, B.J. Mitchell, also talked to Sweatman about the failure to pay the employees for lunch.  According to the plaintiff, Sweatman thereafter told the employees in Mitchell's presence not to write down the lunch time.  (*Id*. at 49-50).  Moore was never paid for his lunch time. (*Id*. at 19).

4

**Drive Time**

When the plaintiff was required to drive more than 100 miles for a job, he only was paid $10.00 per hour for his drive time.  (*Id*. at ¶ 5(b)(14)).  Otherwise, he was paid his regular rate. He was paid straight time (regular rate or $10.00) for drive time, even if it involved hours after having worked over forty hour a week.  (Tr. at 20; Pl. Ex. 2).[4]  Moore talked to Sweatman more than once about being paid time and a half for drive time and was told he only would be paid straight time.[5]  (Tr. at 20).

**Other Facts**

Sweatman testified that CALS misplaced and has been unable to locate the plaintiff's time cards and other documents regarding the hours Moore worked or any other payroll information.  (Tr. at 71-73; Pl. Ex. 3-6).  He did not consult CALS' accountant about overtime issues because he had no notice of any pay issues.  (Tr. at 84 & 86).  He never sought any advice from a lawyer or any federal agency about overtime issues or any other FLSA issues.  (*Id*. at 86).

**Damages**

The plaintiff asserts that his lost wages for unpaid lunches at time and one-half are $4,918.50.  (Pl. Ex. 9).  His lost wages for drive time paid at a straight time rate (*i.e.,* the missing half-time rate) are $783.04.  (*Id*.)  His total lost wages are $5,701.54.  (*Id*.)  The defendants do not challenge his damages calculation, but instead challenge the sufficiency of the evidence on the issue of liability.

---

[4]"Pl. Ex. ___" refer to the exhibits admitted during the trial of this case.

[5]Sweatman testified that he did not know if the employees were paid straight time if the hours were over 40 because that was handled by someone else in the company.  (Tr. at 83).

5

**DISCUSSION**

Because the parties stipulated that Moore was employed by CALS and that CALS was an enterprise engaged in commerce or in the production of goods for commerce, the focal issue is whether the defendants failed to pay Moore at a rate of at least one and one-half times his regular rate for hours worked in any one work week over 40 hours.  If this issue is answered in the negative, it is not necessary to determine the applicability of a two or three year statute of limitations.  If it answered in the affirmative, the court must decide the applicable limitations period.  The final contested question concerns the applicability of liquidated damages.

**The Existence of a Violation**

"Congress enacted the FLSA 'in order to eliminate 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'  *Antenor v. D & S Farms*, 88 F.3d 925, 929 (11th Cir. 1996) (quoting 29 U.S.C. §§ 202(a) & (b))."  *Alvarez Perez v. Sandford-Orlando Kennel Club, Inc*., 515 F.3d 1150, 1156 (11th Cir. 2008).  The FLSA requires that employers pay their employees time and a half for hours an employee works in excess of a 40-hour workweek.  *Id*.; 29 U.S.C. § 207(a)(1).  In order to prevail on his claims under the Act, the plaintiff must prove that he worked without the required  compensation.  29 U.S.C. § 203(g); 29 C.F.R. § 785.11[6]; *Allen v. Bd. of Pub. Educ. for Bibb County*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Reich v. Dep't of Conservation and Nat.*

---

[6] Section 785.11 provides, in pertinent part:

Work not requested but suffered or permitted is work time. For example, an employee may voluntarily continue to work at the end of the shift.  He may be a pieceworker, he may desire to finish an assigned task or he may wish to correct errors, paste work tickets, prepare time reports or other records.  The reason is immaterial. The employer knows or has reason to believe that he is continuing to work and the time is working time....

29 C.F.R. § 785.11.

*Res.*, 28 F.3d 1076, 1082 (11th Cir. 1994). Additionally, he must show that the employer knew

or should have known of the plaintiff's overtime work. *Allen*, 495 F.3d at 1314-15. No violation

of the FLSA occurs "where the employee performs uncompensated work but deliberately

prevents his or her employer from learning of it." *Id*. at 1319.

### Meal Periods

What constitutes a *bona fide* meal period is defined by the regulations:

> **Bona fide meal periods**. Bona fide meal periods are not worktime. Bona
> fide meal periods do not include coffee breaks or time for snacks. These are rest
> periods. The employee must be completely relieved from duty for the purposes of
> eating regular meals. Ordinarily 30 minutes or more is long enough for a bona
> fide meal period. A shorter period may be long enough under special conditions.
> The employee is not relieved if he is required to perform any duties, whether
> active or inactive, while eating. For example, an office employee who is required
> to eat at his desk or a factory worker who is required to be at his machine is
> working while eating....

29 C.F.R. § 785.19(a). Additionally, "[t]ime spent by an employee in travel as part of his

principal activity, such as travel from job site to job site during the workday, must be counted as

hours worked." 29 C.F.R. § 785.38.

The plaintiff asserts that he has established that he did not have a bona fide meal period

all but two Fridays a month as he was eating while driving from job to job. He further asserts

that the time he sent in travel from job site to job site during the workday must be counted as

hours worked. (Doc. 33 at 9 of 13 (citing 29 C.F.R. § 785.38)). Accordingly, he concludes that

the time he spent driving in the truck from job to job constituted "hours worked" and thus was

compensable time. (*Id*.) The defendants retort that Moore's uncorroborated testimony is

insufficient to support a verdict in his favor. (Doc. 32 at 6 of 11). Specifically, they state that

"there was no proof presented where Moore was not compensated for work performed over 40

hours per week, aside from Moore's testimony which was contradicted by Sweatman and at times Moore as well." (Doc. 32 at 6 of 11).

As noted in the background information, CALS initially did not have a written policy for employee break times. (Tr. at 81-82). However, as best the court can discern from the available evidence, one hour typically was deducted each day from an employee's hours for a lunch period. (*Id*. at 16, 36-37 & 79). Sweatman told the plaintiff at the commencement of his employment that he was going to deduct the hour from his pay each day for lunch. (*Id*. at 16). When the plaintiff worked through lunch, Mitchell required him to write "no lunch" on his time card. (*Id*. at 15-16). Mitchell would then sign off on the time card and pass it on to Sweatman at the end of the pay period. (*Id*.)

Moore stated at trial that when he worked through lunch, he wrote it on his time card. (*Id*. at 16). This occurred approximately three times, until Sweatman told Moore to stop writing "no lunch" on his time cards. This was around the end of March 2008. (*Id*. at 17 & 38-39). According to Moore, Sweatman told him that, when he and his partner drove from job to job, one should drive and the other should eat. After the next job, the other person was to eat. (*Id*. at 17-18). Thus, the plaintiff stopped writing "no lunch" on his time cards even though he continued working through lunch. (*Id*. at 19). He did this about four times a week. (*Id*. at 18). As noted previously, Moore he testified that he actually got a full hour for lunch on Fridays "probably twice out of the month." (*Id*.)

Moore also testified that Sweatman told the employees in a meeting to stop writing "no lunch" on the time cards and to take their lunch in their trucks "from job to job." (*Id*. at 50-51). Moore further testified that he went to Sweatman "numerous times" with his check and told him

8

that he (Moore) was owed certain hours for working through lunch.  (*Id*. 16-17).  Nothing changed, however.  According to Moore, Mitchell also talked to Sweatman about the situation.  It was after this that Sweatman told the employees in Mitchell's presence not to write down the lunch time.  (*Id*. at 49-51).

The court finds the testimony of Moore to be credible on the issue of why he discontinued writing "no lunch" on his time cards.  Although no other witness corroborated this testimony, the court does not find any substantial reason to discount the same.[7]  Additionally, the defendants' position is severely compromised by the absence of any records supporting the same.  For instance, while Sweatman testified about a memo (see Tr. at 87) on the lunch hour practice, none was ever offered during trial.[8]  This deficiency should not and cannot enure to the benefit of the defendants under the circumstances.  *See Allen v. Bd. of Pub. Educ. For Bibb County*, 495 F.3d 1306, 1316 (11th Cir. 2007) ("It is the employer's duty to keep records of the employee's wages,

---

[7]The court is cognizant of the fact that Moore allegedly did not pay all of his taxes that were due from tax year 2007, apparently owing a deficiency for some miscellaneous income.  (See Pl. Ex. 1).  As noted by the defendants, Moore stated that he did not receive a 1099 concerning this income, causing the deficiency.  (Doc. 32 at 8).  However, this alone does not alter the court's determination in this matter.  (See FED. R. EVID. 608(b)).

[8]Sweatman testified:

I don't think we actually wrote the actual policy till 2008.  We did have a memo, it wasn't actually, I don't know if you want to call it a policy or not, but that we put out that lunch hours would not be paid unless they got it approved by the supervisor to work through lunch.

(Tr. at 87).  At another juncture, he testified that the policy was not in effect during the time the plaintiff was employed there because "it was one of the things that was just not an issue."  (*Id*. at 81).  The colloquy then provides:

Q.      The company does not have an actual policy for break time?

A.      We did an addendum when it became an issue and gave it to them [(the employees)] in the sales meeting or the safety meeting, not sales meeting, safety meeting, because of the start [sic] becoming an issue, that we put it in a policy that your had to get prior approval from your supervisor.

Q.      Where is that policy?

A.      I haven't been able to locate at it.

(*Id*.)

9

hours, and *other conditions and practices of employment*.") (italics added) (citing *Anderson v.*

*Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946))).  The court

is also troubled by other testimony of Sweatman.  Specifically, he stated as follows:

> Q.    Weren't there occasions where Mario came to you and told you he had
>       worked through lunch?
>
> A.    Not to me.
>
> Q.    Did he ever come to you and tell you that he had written "no lunch" on his
>       time card?
>
> A.    No.
>
> Q.    Who came to you about that?
>
> A.    As I recall, nobody, not about lunchtime.
>
> Q.    About some sort of time?
>
> A.    Where they thought that they had some extra hours that wasn't [sic]
>       written down, unrelated to lunch.
> ....
> Q.    Employees who ate their meal while driving from job to job, you don't
>       know whether or not they were paid for that time do you?
>
> A.    No.

(*Id*. at 82).  This is inconsistent with earlier testimony that it was an issue that ultimately led to a

"policy" decision.  (*Id*. at 81).  Thus, the court finds Moore's testimony credible and more than

sufficient when placed alongside that of Sweatman.  The evidence concerning the amount of loss

(Pl. Ex. 9) shows unpaid lunch time totaling $4,918.50.

## Drive Time

As to this claim, the plaintiff alleges that he was not paid the requisite overtime rate when

his travel time exceeded forty hours for the week. (Tr. at 20; Pl. Ex. 2). More specifically, the plaintiff notes that when he was required to drive more than 100 miles for a job, he only was paid $10.00 per hour for his drive time. (Pretrial Order at ¶ 5(b)(14)). During other travel time (less than 100 miles), he only was paid his straight time, even if it involved hours after having worked over forty hours a week. Again, as to this claim, the defendants assert that the evidence is insufficient.

Moore testified that he talked to Sweatman more than once about being paid time and a half for drive time. Sweatman told him that he (the plaintiff) would be paid only straight time. (Tr. at 20). The court again credits Moore's testimony. Moore is therefore due the extra "half-time" for the relevant period. The undisputed evidence (Pl. Ex. 9) shows that his damages are $783.04 on this claim.

### Statute of Limitations

In *Alvarez-Perez*, the Eleventh Circuit stated:

> The statute of limitations for claims seeking unpaid overtime wages generally is two years, but if the claim is one "arising out of a willful violation," another year is added to it. 29 U.S.C. § 255(a). To establish that the violation of the Act was willful in order to extend the limitations period, the employee must prove by a preponderance of the evidence that his employer either knew that its conduct was prohibited by the statute or showed reckless disregard about whether it was. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S. Ct. 1677, 1681, 100 L. Ed. 2d 115 (1988). The Code of Federal Regulations defines reckless disregard as the "failure to make adequate inquiry into whether conduct is in compliance with the Act." 5 C.F.R. § 551.104.

*Id*. 515 F.3d at 1162-63. As the Supreme Court explained in *McLaughlin*:

> If an employer acts reasonably in determining its legal obligation, its action cannot be deemed willful.... If an employer acts unreasonably, but not recklessly, in determining its legal obligation, then ... it should not be ... considered [willful.]

*Id.* at 135 n.13, 108 S. Ct. 1677.  Accordingly, the issue is whether either defendant knew or showed reckless disregard for whether the conduct was prohibited by the statute.  In evaluating this issue, the court must keep in mind that the Supreme Court "intended to draw a significant distinction between ordinary violations and willful violations."[9]  *Id*. at 132, 108 S. Ct. 1677.

The beginning point is the fact that the law defines reckless disregard as the failure to make adequate inquiry into whether conduct is in compliance with the Act.  *See* 5 C.F.R. § 551.104.  The further inquiry concerns whether the totality of the evidence supports a conclusion of willfulness.  The court finds that the evidence does support such a determination.  The credible testimony is that Moore repeatedly complained to Sweatman concerning his lunch hour and drive time not being properly compensated.  The employees were told by Sweatman not to write down "no lunch."  He gave the direction not only to the line employees, but to at least one supervisor as well.  Additionally, Sweatman did not and could not produce the plaintiff's employment records.  Still further, he testified, despite being the president and owner of CALS, that he did not know whether or not the employees were paid for their meal time.  Accordingly, the court finds that the defendant's conduct was in fact willful.  The statute of limitations for this case is the three year period, which includes the entirety of Moore's employment.  *See* 29 U.S.C. § 255(a); 5 C.F.R. § 551.104; *Alvarez Perez*, 515 F.3d at 1162-63.

To the extent that the defendants argue that "[t]he benevolent nature of Central Alabama Lighting Services, Inc. and Sweatman toward the employees, and particularly Moore, is strong

---

[9]In *Hanger v. Lake County*, 390 F.3d 579 (8th Cir. 2004), the court discussing the "willfulness" standard in a Family and Medical Leave Act case, noted that in *McLaughlin*, "'The [Supreme] Court rejected th[e] alternative standard [for willfulness] because an employer's decision not to seek legal advice could result from negligence or a good-faith, incorrect assumption about a statute's applicability just as easily as it could result from recklessness.' *Id.* at 135...." *Hanger*, 390 F.3d at 584.

evidence to indicate a lack of any 'willful' or 'knowing' intent," the court finds that this does not

alter the ultimate conclusion in this matter.  (Doc. 32 at 8).  Although a consideration in the

court's review of the totality of the circumstances, it is not dispositive.

**Liquidated Damages**

   In view of the court's determination that the defendants are liable to the plaintiff under

the FLSA, the next question is whether liquidated damages are required under the circumstances.

29 U.S.C. § 216(b) ("Any employer who violates the provisions of [the FLSA] ... shall be liable

to the employee or employees affected in the amount of ... their unpaid overtime compensation ...

and in an additional equal amount as liquidated damages."); *Alvarez Perez*, 515 F.3d at 1163;

*Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1566-67 (11th Cir. 1991).  The relevant

question is whether to the defendants acted in subjective and objective good faith.  If the

defendants acted in good faith, the court can reduce or deny an award of liquidated damages.

The specific inquiry is did "'the employer show[] to the satisfaction of the court that the act or

omission giving rise to such action was in good faith and that he had reasonable grounds for

believing that this act or omission was not a violation of the Fair Labor Standards Act.'  29

U.S.C. § 260." *Alvarez Perez*, 515 F.3d at 1163.  As to this showing, it is well-settled that the

employer bears the burden of establishing the same.  *Id*.  (citing *Dybach*, 942 F.2d at 1566).

   In this case, the defendants have neither pled nor argued any good faith defense.  (Doc. 5

& 17).  To the contrary, they simply challenge the credibility of the plaintiff's testimony and

evidence.  They have not satisfied their burden of proof.  Accordingly, the court finds that the

plaintiff's damages under the FLSA are due to be doubled, totaling $11,403.08.

**Individual Liability**

The final matter under the FLSA is whether Sweatman is personally liable along with CALS for the damages awarded.  The court finds that he is.  As noted by the plaintiff's counsel, an individual can be held liable for violating the overtime provision of the FLSA if he is an "employer" within the meaning of that law.  *See Alvarez Perez*, 515 F.3d at 160-61.  The law broadly defines an employer as any person acting directly or indirectly in the interest of an employer in relation to an employee.  *Id*. (citing 29 U.S.C. § 203(d)).  "Whether an individual falls within this definition 'does not depend on technical or isolated factors but rather on the circumstances of the whole activity.'" *Id*. (citing *Hodgson v. Griffin & Brand of McAllen, Inc*., 471 F.2d 235, 237 (5th Cir. 1973) (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730, 67 S. Ct. 1473, 1477, 91 L. Ed. 1772 (1947))).  In *Alvarez Perez*, the court stated:

> Our decision in *Patel* [*v. Wargo*, 803 F.2d 632 (11th Cir. 1986)] is instructive.  There we held that the defendant, who was both the president and vice-president of a corporation, as well as a director and a principal stockholder, was not an employer for FLSA purposes.  We reached that conclusion because he did not "have operational control of significant aspects of [the company's] day-to-day functions, including compensation of employees or other matters in relation to an employee."  *Id*. (internal quotation marks omitted); *see also Wirtz v. Pure Ice Co*., 322 F.2d 259, 263 (8th Cir. 1963) (finding that a majority stockholder who visited the company only two or three times a year and "had nothing to do with the hiring of the employees or fixing their wages or hours" was not an employer under the FLSA).  While acknowledging that the defendant in Patel could have, if he had chosen, played a greater role in the operations of the company, we focused on the role that he did play in concluding that he "lacked the operational control necessary for the imposition of liability as an 'employer' under the FLSA."  *Patel*, 803 F.2d at 638; *see also Wirtz*, 322 F.2d at 262 ("There is little question from the record but what Thompson as the majority stockholder and dominant personality in Pure Ice Company, Inc., could have taken over and supervised the relationship between the corporation and its employees had he decided to do so.  A careful reading of the record, however, indicates that he did not do so.").

14

*Alvarez Perez*, 515 F.3d at 1160-61.

In the present case, the evidence unequivocally demonstrates that Sweatman had operational control of CALS, he was involved in its day-to-day operation, and he had a direct role in the supervision of the plaintiff.  Sweatman was on site, gave direction to the operation of the business, and directed the employees and supervisors.  Accordingly, he is jointly and severally liable with CALS to Moore under the FLSA for the unpaid wages and liquidated damages.

### State Law Claim

In his amended complaint, Moore claimed that, for any weeks in which he did not work over forty hours, defendant CALS owes him straight time pay for unpaid hours worked through lunch under the state law cause of action of work and labor performed.  (Doc. 10).  In his post-trial brief, he states, "Given his uncontested testimony that he always worked over forty hours per week, this claim is unnecessary and is no longer pursued."  (Doc. 33 at 2, n.1).  Accordingly, the court finds that the state law claim is deemed abandoned.

### CONCLUSION

Premised on the foregoing, the court finds that the defendants have violated the plaintiff's rights under the FLSA and that he is entitled to recover compensatory and liquidated damages from them for the entire period he was employed at CALS.  An appropriate judgment will be entered.

**DONE**, this the 22nd day of June, 2011.

*John E. Ott*

**JOHN E. OTT**
United States Magistrate Judge

15